ESFANDIAR KADIVAR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kadivar v. Commissioner
Docket No. 732-86
United States Tax Court
T.C. Memo 1989-404; 1989 Tax Ct. Memo LEXIS 402; 57 T.C.M. (CCH) 1183; T.C.M. (RIA) 89404; 11 Employee Benefits Cas. (BNA) 1394; August 3, 1989
Esfandiar Kadivar, pro se. *407 James S. Yan, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In a notice of deficiency mailed to petitioner on October 9, 1985 respondent determined that petitioner is liable for excise taxes under section 4975 for the years and in amounts as follows: Section [1]
Year
4975(a)
4975(b)
1980
$   184
$   3,671 1981
1,626
32,512 1982
3,357
67,127 1983
4,538
90,755 1984
5,719
114,383 By an amendment to his answer, respondent increased his determination of petitioner's liability for excise taxes but made certain concessions on brief. These matters are computational and can be addressed by the parties in the Rule 155 computations. The issues for decision are: (1) whether petitioner was a disqualified person under section 4975(e)(2); (2) whether certain loans made to petitioner by pension plans of his professional corporation constituted prohibited transactions under section *408 4975(c); (3) if the loans are found to be prohibited transactions whether they are exempt from excise tax under section 4975(d)(1); and (4) if the loans are found to be prohibited transactions whether they were corrected within the applicable taxable period. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits associated therewith are incorporated herein by reference. Petitioner, Esfandiar Kadivar, resided in Lancaster, California at the time of filing his petition. Petitioner is a physician and during 1980 through 1984 was the sole stockholder and president of Esfandiar Kadivar, M.D., Inc., a professional corporation. (Corporation) During the same period he and Maurine Butler, formerly Maurine Edwards, were the only employees of the Corporation and the only participants under the Corporation's two qualified pension plans. Petitioner was the trustee for each of the plans and he and Maurine Butler served as the loan committees for the plans. In or about November of 1979 petitioner commenced an action for divorce against his wife in the Superior Court of the State of California for Los Angeles County. On April 17, 1980, Judge *409 Dickey of the Superior Court ordered petitioner not to sell or otherwise dispose of or encumber any separate or community property and pending trial of the matter to make minimum monthly distributions from the Corporation of $ 500 to petitioner's children, $ 1,200 to petitioner's wife and $ 2,000 to petitioner. Judge Dickey also ordered that any additional amounts distributed to the same parties from the Corporation were to be disbursed at the same ratio, i.e. $ 5 to children, $ 12 to wife, and $ 20 to petitioner. The attorneys for both parties in the divorce proceedings were also directed by Judge Dickey to "tap" any other assets of petitioner in the event corporate assets were not sufficient to make the minimum distributions. On or before October 1, 1980 petitioner borrowed $ 75,678.30 from the pension plans. During their fiscal year beginning on October 1, 1980 the pension plans made twelve additional loans to petitioner on the dates and in amounts as follows: Date
Loan
10/10/80
$ 110,000.00
01/05/81
12,000.00
02/27/81
5,000.00
03/13/81
5,000.00
03/25/81
10,000.00
04/06/81
7,000.00
05/19/81
5,000.00
06/10/81
3,500.00
06/16/81
600.00
06/30/81
1,200.00
07/09/81
1,000.00
07/10/81
300.00
*410 As a result by September 30, 1981 petitioner owed the plans $ 236,278.30, exclusive of any interest. The parties have stipulated that petitioner executed a promissory note for each of the amounts owed to the plans. However, from petitioner's testimony at trial and from our examination of the purported notes it is apparent that the thirteen documents were prepared and executed by petitioner during respondent's audit which did not commence until 1985. Nevertheless each purported note calls for interest at 10% payable together with the principal amount five years after the date of the document and recites that the collateral for the loan is a 50% interest in certain real property referred to as the La Granada Apartments. The pension plans had net assets at October 1, 1980 of $ 358,502 and at September 30, 1981 of $ 447,071. Approximately 53% of the plans' net assets at September 30, 1981 consisted of the loans to petitioner. The joint agreement for the pension plans dated October 1, 1978, contains these provisions for making loans to participants: Upon the application of any participant, the [Loan] Committee, in a uniform and nondiscriminatory manner, may direct the Trustee *411 to make a loan or loans to such participant. All such loans shall be adequately secured and shall have a definite maturity date. Such security shall consist of the assignment of the participant's entire right, title and interest in and to (1) the Trust Fund, and (2) if the participant's vested interest in the Trust Fund is less than the amount of such loan, or in lieu of this assignment of his interest in the Trust Fund, other property of sufficient value to adequately secure the repayment of the loan. All such loans shall be considered investments of the Trust Fund and interest shall be charged thereon at a reasonable rate determined by the Committee in a uniform and nondiscriminatory manner. Loans shall not be used as a means of distributing benefits before they otherwise become due. The record contains thirteen documents which purport to be applications by petitioner for the thirteen loans. However, the applications were not prepared by petitioner during 1980 and 1981 on the dates they bear. Instead after the loans at issue were under examination in 1985 by respondent's agent, petitioner prepared and backdated the applications. The backdated applications contain statements *412 that the loans are secured by petitioner's vested interest in the plans and by his interest in La Granada Apartments and that the loans were approved on the dates they bear by the loan committees for the plans. Despite such statements the record contains no assignment of petitioner's interest in the plans, no encumbrance of his interest in La Granada Apartments, and no formal approval of the loans by the loan committees. Petitioner repaid the principal amounts of the aforesaid loans with five personal checks on the dates and in the amounts set forth below: Date
Amount
10/03/85
$  75,678.30
01/31/86
22,000.00
03/10/86
22,000.00
04/01/86
36,600.00
06/20/86
80,000.00
$ 236,278.30
With a check dated January 14, 1988 petitioner paid interest on the loans in the total amount of $ 75,139.15. On the same date he acknowledged that he still owed the plans additional interest in the amount of $ 43,000 by executing an instrument which reads as follows: 1-14-88 I, Esfandiar Kadivar, owe to Esfandiar Kadivar, M.D., Inc., Pension Plan $ 43,000.00, which is secured against my vested interest plus the recorded property at 44641 10th Street West, Lancaster, CA. *413 , payable in two years with an interest rate of 10% payable yearly. [Signature] Esfandiar Kadivar 1-14-88 In November of 1981 petitioner made a personal loan of $ 12,000 to Maurine Butler on which interest at 12% per annum was due. OPINION Under section 4975 two levels of excise tax are imposed on any disqualified person who participates in a prohibited transaction with a qualified pension plan. Initially section 4975(a) imposes a tax equal to 5% of the amount involved in the prohibited transaction for each year (or part thereof) in the taxable period. Section 4975(b) then imposes an additional tax equal to 100% of the amount involved in the prohibited transaction if such transaction is not timely corrected. (1) Disqualified Person Under Section 4975(e)(2)
Under section 4975(e)(2) a disqualified person includes any person who is a fiduciary (section 4975(e)(2)(A)), an owner of 50% or more of the stock of a corporation sponsoring the plan (section 4975(e)(2)(E)) or an officer or *414 director of such corporation (section 4975(e)(2)(H)). We have found that petitioner was the trustee for the plans and therefore was a fiduciary under 4975(e)(2)(A). He was also the sole shareholder of the Corporation and thus an owner under section 4975(e)(2)(E). Finally, as president of the Corporation, he is an officer under section 4975(e)(2)(H). He therefore is clearly a disqualified person under section 4975(e)(2). (2) Prohibited Transactions Under Section 4975(c)
Under section 4975(c)(1)(B) the term prohibited transaction includes any direct or indirect "lending of money or other extension of credit between a plan and a disqualified person." We have previously found in this case that loans were made by the qualified plans of petitioner's professional corporation to petitioner, a disqualified person under section 4975(e)(2). Therefore the loans obviously constitute prohibited transactions within section 4975(c) unless such transactions satisfy one of the exemptions set forth in section 4975(d). (3) Exempt Transactions Under Section 4975(d)
Petitioner contends that *415 his loans are exempted from the prohibited transaction provisions of section 4975(c) by section 4975(d)(1) which provides that a loan made by a plan to a disqualified person who is a participant in or beneficiary under the plan is not a prohibited transaction if the loan: (A) is available to all such participants or beneficiaries on a reasonably equivalent basis, (B) is not made available to highly compensated employees * * * in an amount greater than the amount made available to other employees, (C) is made in accordance with specific provisions regarding such loans set forth in the plan, (D) bears a reasonable rate of interest, and (E) is adequately secured. During the years at issue, petitioner and Maurine Butler were the only participants in the plans. The record contains no evidence that Maurine Butler ever applied for or received a loan from the plans. We have found, however, that in 1980 and 1981 while petitioner was receiving over $ 236,000 in loans from the plans at an interest rate of 10% he was personally lending Maurine Butler $ 12,000 at 12%. Consequently under these *416 circumstances we are unable to conclude that a loan similar to those made to petitioner was available to all participants on a reasonably equivalent basis (section 4975(d)(1)(A)), that such a loan was not made available to a highly compensated employee (petitioner) in a greater amount than to another employee (Ms. Butler) (section 4975(d)(1)(B)), or that the interest rate of 10% on petitioner's loans is reasonable in view of his contemporary personal loan to Ms. Butler at 12% (section 4975(d)(1)(D)). Additionally, from the record before us we are not satisfied that petitioner's loans were made in accordance with the plan (section 4975(d)(1)(C)) or that his loans were adequately secured (section 4975(d)(1)(E)). First, under the plan a loan was to originate with an application by the participant to the loan committee which had the responsibility of determining what constituted adequate security for the loan as well as a reasonable rate of interest. Under the plan, adequate security included an assignment of the participant's entire vested interest in the trust fund plus if necessary the pledge of other property of sufficient value to secure repayment. At trial petitioner admitted *417 that no application was made to the loan committee during the years at issue for any of his thirteen loans. Instead after the loans were under examination by respondent, petitioner prepared backdated applications that purported to show the loans had been pre-approved by the committee. Under these circumstances it is apparent that the loan committee had no opportunity to determine a reasonable rate of interest or adequate security prior to the time the loans were made. Furthermore, at the time the loans were made, petitioner did not assign his vested interest in the plans. From the record before us it appears that no attempt to provide any security occurred until the backdated loan applications were prepared and that attempt was limited to a reference by petitioner on the backdated applications to his 50% interest in La Granada Apartments and "my vested interest in the plan." Even this belated reference cannot be construed as an assignment of his interest in the plans or an encumbrance on his interest in La Granada Apartments. From all of the foregoing we are forced to conclude that petitioner's loans do not qualify under section 4975(d)(1) for exemption from the prohibited transaction *418 provisions of section 4975(c). (4) Correction of Prohibited Transactions
As previously noted section 4975(b) imposes an additional tax equal to 100% of the amount involved in a prohibited transaction if an initial tax is due under section 4975(a) and the prohibited transaction is not corrected within the taxable period. The taxable period is defined in section 4975(f)(2) as a period beginning with the date on which the prohibited transaction occurs and ending on the earliest of -- (A) the date of mailing a notice of deficiency with respect to the tax imposed by subsection (a) under section 6212, (B) the date on which the tax imposed by subsection (a) is assessed, or (C) the date on which correction of the prohibited transaction is completed. A correction of a prohibited transaction can be accomplished by "undoing the transaction to the extent possible, but in any case, placing the plan in a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards." Section 4975(f)(5). Temporary regulations under *419 section 4975 provide that, in the absence of permanent regulations for section 4975(f)(4) and (5), section 53.4941(e)-1 of the Foundation Excise Tax Regulations are to be relied upon in the interpretation of terms appearing in section 4975(f). Section 53.4941(e)-1(c)(4), Foundation Excise Tax Regs., provides: In the case of the use by a disqualified person of property owned by a private foundation, undoing the transaction includes, but is not limited to, terminating the use of such property. In addition to termination, the disqualified person must pay the foundation -- (a) The excess (if any) of the fair market value of the use of the property over the amount paid by the disqualified person for such use until such termination, and (b) The excess (if any) of the amount which would have been paid by the disqualified person for the use of the property on or after the date of such termination, for the period such disqualified person would have used the property (without regard to any further extensions or renewals of such period) if such termination had not occurred, over the fair market value of such use for such period. In applying (a) of this subdivision the fair market value *420 of the use of property shall be the higher of the rate (that is, fair rental value per period in the case of use of property other than money or fair interest rate in the case of use of money) at the time of the act of self-dealing (within the meaning of paragraph (e)(1) of this section) or such rate at the time of correction of such act of self-dealing. In applying (b) of this subdivision the fair market value of the use of property shall be the rate at the time of correction. In this case the notice of deficiency was mailed to petitioner on October 9, 1985. Therefore the taxable period will end on that date unless we find that the prohibited transactions were corrected at an earlier date. Under the applicable regulation it is obvious that correction of the transactions would have required termination of the loans by their repayment plus reasonable interest. We have found that this did not occur. In fact the only payment made by petitioner by October 9, 1985 was the payment on October 3, 1985 of $ 75,678.30, the principal amount of his first loan. No interest was paid on the first loan and no payment of any kind was made on the other loans prior to October 9, 1985. Therefore *421 we are forced to conclude that petitioner did not correct any of the prohibited transactions by the end of the applicable taxable period. Thus he is also liable for the additional tax under section 4975(b). However, petitioner may still avoid the harshness of this conclusion by making further corrections pursuant to section 4961 and section 4963. In arriving at the above conclusion we have considered petitioner's contention that his conduct with respect to the loans from the plans represent good faith efforts on his part to comply with Judge Dickey's orders in the divorce action. In fact, petitioner argues that in the divorce action Judge Dickey ordered him to use the plans' assets to make disbursements to himself, his wife, and his children. We have also considered petitioner's further contention that overall his loans constituted good prudent investments for the plans since by the date of trial the loans had been repaid at reasonable rates of interest. We are unable to agree. First, we find no evidence in the record that petitioner was ordered by Judge Dickey to use plan assets to make or to fund disbursements in the divorce action. Secondly, from the record as a whole we are *422 unable to conclude that the loans were a prudent investment for the plans. Thirdly, even if we could find that petitioner acted in good faith and in a prudent manner our conclusion would be the same because as pointed out in Rutland v. Commissioner, 89 T.C. 1137, 1146 (1987): The language and legislative history of ERISA indicate a congressional intention to create, in section 4975(c)(1), a blanket prohibition against certain transactions, regardless of whether the transaction was entered into prudently or in good faith or whether the plan benefited as a result. "Good intentions and a pure heart are no defense" to liability under section 4975(a). Leib v. Commissioner, 88 T.C. 1474, 1481 (1987). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩